IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| 350 MONTANA, et al.,<br><br>                     Plaintiffs,<br><br>vs.<br><br>DEB HAALAND, et al.,<br><br>                     Defendants,<br><br>and<br><br>SIGNAL PEAK ENERGY, LLC,<br><br>                     Defendant-Intervenor. | CV 19–12–M–DWM<br><br><br>ORDER |

On February 10, 2023 at 3:16 p.m., the United States Office of Surface Mining Reclamation and Enforcement's ("Enforcement Office") approval of Signal Peak Energy, LLC's ("Signal Peak") Bull Mountains No. 1 Mine Expansion ("Mine Expansion") was vacated. (Doc. 97.) Defendant-Intervenor Signal Peak now moves for clarification of theFebruary 10, 2023 Order vacating the Mine Expansion approval ("Vacatur Order") under Federal Rule of Civil Procedure 59(e).[1] (Doc. 98.) Plaintiffs oppose, (Doc. 104); Federal Defendants take no position, (Doc. 103).

---

[1] Signal Peak also moves for expedited briefing on the motion for clarification.

1

Signal Peak believes "the Court may have intended" to order deferred vacatur and seeks clarification that vacatur "is effective *after* Signal Peak completes mining its current panel and safely removes its equipment from the panel." (Doc. 99 at 2, 9.) It further seeks an order that "vacatur take effect *after* Signal Peak has completed mining Panel 9 and safely removed its equipment from the existing recovery room," and an order allowing it "to stockpile the volume of federal coal mined in Panel 9 during the pendency of the Enforcement Office's preparation of an" environmental impact statement ("EIS"). (*Id.* at 9.) Plaintiffs counter that the Vacatur Order is clear, that Signal Peak's motion for clarification is "simply a request for a do over," and that Signal Peak has not demonstrated grounds to alter or amend the judgment under Rule 59(e). (Doc. 104 at 2–3.) Because Plaintiffs are correct, Signal Peak's motion is denied.[1]

## LEGAL STANDARD

Under Rule 59(e), a party may file a "motion to alter or amend a judgment" within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "[A] Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). "A district court may

---

[1] (*See* Docs. 100, 101.) Because the other parties have already responded to the motion for clarification, the request for expedited briefing is moot.

2

grant a Rule 59(e) motion if it is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) (internal quotation marks omitted). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). Finally, "[s]ince specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks omitted).

## ANALYSIS

With its motion for clarification, Signal Peak feigns confusion by asking for remedies it knows were not previously ordered because it never presented them as options in the first instance. It uses the procedural vehicle of Rule 59(e) to attempt another bite at the apple and to maintain its ability to mine federal coal. However, as Plaintiffs correctly argue, Signal Peak's motion for clarification "fails to address any of the grounds on which [a Rule 59(e)] motion may be granted." (Doc. 104 at 10.) Apart from citing Rule 59(e) as the basis for its motion in the opening sentence of its brief in support, Signal Peak does not explain why the evidence and arguments now being presented were not available on January 20, 2023 when it

filed its brief on the consequences of vacatur. *See Allstate Ins. Co.*, 634 F.3d at 1111. Because Signal Peak fails to provide legal support for its Rule 59(e) motion and adds contradictory evidence and new remedies that could have previously been presented, the motion is denied. Moreover, based on the parties' filings on the consequences of vacatur, (Docs. 95, 96, 97), a hearing was not held prior to the entry of vacatur despite Signal Peak's request for one. Because Signal Peak may not remake that factual record now, a hearing is still not required.

## I.   "New" and Contradictory Evidence

Plaintiffs first argue that the only new evidence Signal Peak provides either contradicts its previous declarations or impermissibly reframes them, and either way does not comply with Rule 59(e). They are correct.

Signal Peak now reframes its position about the effects of vacatur on moving the longwall. (Doc. 99-1 at ¶ 7.) Previously, Signal Peak averred that the only way it can move the longwall is by using the recovery room method it currently employs. (*See* Doc. 96-3.) Now, it declares that there is a second method for moving the longwall. This newly described method uses a netting system to extract materials from behind the longwall, has been used at the mine in 2011 and 2012, and requires advance approval from the Mine Safety and Health Administration. (Doc. 99-1 at ¶ 7.) As a method Signal Peak has previously used,

4

this "new" evidence is not new at all; it was known to Signal Peak prior to the vacatur order.

Signal Peak also changes its position on how vacatur would impact potential closure of the mine. Signal Peak previously warned that vacatur would derail and change the quantity and type of coal it could mine:

> The mine is currently set to reach a small portion of federal coal at the end of Panel 9 in March 2023. Phipps Decl. ¶ 13; see also Ex. 1. Signal Peak has already constructed a recovery room at the end of Panel 9, and the longwall is too close to that recovery room to safely prepare another recovery room before reaching the federal coal. If enjoined from mining the federal coal at the end of Panel 9, Signal Peak will be forced to abandon all 185 longwall shields in the panel and allow the mine to collapse around them, resulting in significant economic losses.

(Doc. 96 at 7 n.6.) Signal Peak also declared that vacatur would force it to abandon its longwall shields in Panel 9, which would leave it "without any spare shields" and it "would lose the ability to mine certain coal reserves." (Doc. 96-3 at ¶ 14.) However, Signal Peak now asserts in no uncertain terms that vacatur and a prohibition on mining federal coal would force the mine to close for at least eight months or until it is able to rebuild the additional 35 spare shields that are necessary for the longwall move. (Doc. 99-1 at ¶ 8–9.) Signal Peak has already ordered 150 of the 185 shields it would need for mining Panel 10, which should arrive by April. *(Id.* at ¶ 8.) This diverges from Signal Peak's previous declarations, which asserted it would take 2-3 years to replace the protective shields. (Doc. 96-3 at ¶ 14.)

5

Signal Peak also contradicts earlier declarations about the consequences of vacatur. It now asserts that it plans to reach federal coal in Panel 9 two months after it had previously asserted (May, rather than March) and it will need to mine 450,000 tons of federal coal in Panel 9, (Doc. 99-1 at ¶ 5), double what it had previously said would be needed, (Doc. 96-1 at ¶ 13).

These potential impacts of vacatur were either not included in Signal Peak's original vacatur briefing or have drastically changed here. As Plaintiffs argue, Signal Peak should not have the opportunity to add additional facts now that the Mine Expansion approval has been vacated, especially when they were not "newly" discovered. Signal Peak had an opportunity to establish this record before the Court made its decision on vacatur and it did not do so.

## II.   New Arguments Presented

Plaintiffs further argue that Signal Peak may not suggest new arguments for possible remedies at this stage when it could have previously done so. Because Signal Peak provides no reason why they could not have previously made these arguments, the arguments are improper.

On December 5, 2022, the parties were ordered to "file briefs . . . regarding the consequences of vacatur." (Doc. 84.) As instructed, each party filed briefs on their suggested remedies and the purported consequences of those remedies. Plaintiffs requested vacatur, Federal Defendants requested deferred vacatur, and

6

Signal Peak requested that it be allowed to continue mining federal coal while the Enforcement Office prepares its EIS. (*See* Doc. 97 at 5.) Signal Peak now requests that it be allowed to continue mining Panel 9, including the federal coal in that panel, and to stockpile the federal coal it mines there until the Enforcement Office has completed its EIS. (Doc. 99 at 10.)

The problems with this newly requested remedy of pseudo-deferred vacatur are twofold. Primarily, Signal Peak is using the vehicle of a Rule 59(e) motion to present a new argument that it had multiple opportunities to present before. Signal Peak now requests a "clarification" that vacatur of the Mine Expansion approval and a prohibition of mining federal coal only will start once it has completed mining Panel 9, which includes some federal coal. Deferred vacatur was an available remedy at both the status hearing on December 2, 2022, (*see* Doc. 83 (Min. Entry)), and also when briefing was filed on January 20, 2023, (Doc. 96). Federal Defendants even requested it at that time, albeit with a different deferment period than Signal Peak now requests. (Doc. 94).

Secondarily, Signal Peak is now feigning confusion over the details of the Vacatur Order as a way to present these new arguments. Signal Peak argues that the Court "may have intended" deferred vacatur despite the fact that there is no mention of deferred vacatur in the Vacatur Order. There is, however, contrary to

7

Signal Peak's arguments, consideration and balancing of the consequences of immediate vacatur based on the record presented by the parties. (Doc. 99 at 8.)

For example, the serious economic impacts of moving the longwall and the potential of mine closure were discussed in the Vacatur Order: "the economic disruption of stopping the mining of federal coal may be large, but NEPA's main concern is a project's environmental impact, not the economic impact of putting the project on hold." (*See* Doc. 97 at 13–14.) Signal Peak claims that "this Court does not appear to have weighed the impact of mine closure, expect as a possibility years down the road" and that "the Order does not consider the impacts regarding the loss of current shields (now aggravated by the timing of the Order)." (Doc. 99 at 8–9.) The Vacatur Order did just that. It scrutinized Signal Peak's declarations on the consequences of vacatur and determined the impacts of moving the longwall do not outweigh the seriousness of the agency errors. (*See* Doc. 97 at 10–12.)

Additionally, before its briefing on the motion for clarification, Signal Peak never suggested stockpiling the federal coal it mines while the Enforcement Office prepares its EIS. Therefore, it may not present that remedy now as some sort of alternative to the immediate cessation of the mining of federal coal in the Mine Expansion area. As Plaintiffs argue, even if Signal Peak had previously presented this argument, doing so would not comport with NEPA by narrowing available alternatives that the Enforcement Office could consider in its EIS process. *See* 40

8

C.F.R § 1506.1(a)(2) ("[Until an agency issues a . . . record of decision . . . no action concerning the proposal may be taken that would . . . limit the choice of reasonable alternatives."). Coal cannot be put back in the ground after it has been mined, so mining and stockpiling would limit the NEPA process. Ultimately, because these arguments could have been presented earlier, they are improper here.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Signal Peak's motion for clarification (Doc. 98) is DENIED. As of February 10, 2023, Signal Peak's authorization to mine federal coal in the Mine Expansion area was vacated, effective immediately. (*See* Doc. 97.)

IT IS FURTHER ORDERED that Signal Peak's motion for expedited briefing, (Doc. 100), is DENIED as MOOT.

DATED this 28th day of February, 2023.

/s/ 5:20 P.M.
Donald W. Molloy, District Judge
United States District Court